AMY J. LONGO (Cal. Bar No. 198304)
Email: longoa@sec.gov
DAVID S. BROWN (Cal. Bar No. 134569)
Email: browndav@sec.gov
BRENT W. WILNER (Cal. Bar No. 230093)
Email: wilnerb@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission

Robert A. Cohen, Unit Chief (Cyber Unit)
Headquarters
100 "F" Street, N.E.
Washington, District of Columbia 20549

Michele Wein Layne, Regional Director
John W. Berry, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**ORIGINAL**

**FILED**

OCT - 3 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>BLOCKVEST, LLC and REGINALD BUDDY RINGGOLD, III a/k/a RASOOL ABDUL RAHIM EL,<br><br>　　　　　Defendants. | Case No. '18 CV 2287 GPC BLM<br><br>**COMPLAINT**<br><br>**(FILED UNDER SEAL)** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

1

# SUMMARY

1.      Plaintiff Securities and Exchange Commission ("SEC") brings this emergency action to halt an ongoing investment fraud involving an upcoming initial coin offering ("ICO") by defendant Blockvest LLC ("Blockvest") and its founder and principal, Reginald Buddy Ringgold, III, aka Rasool Abdul Rahim El ("Ringgold"). Blockvest, which purports to be the "first [U.S.] *licensed and regulated* tokenized crypto currency exchange and index fund" (emphasis added), claims that it has already raised more than $2.5 million in pre-ICO sales of its BLV digital tokens ("BLVs"), and that it will raise $100 million during its ICO, purportedly to fund Blockvest's digital asset-related financial products and services.

2.      Blockvest and Ringgold claim their ICO has been "registered" and "approved" by the SEC and other regulators, even going so far as to use the SEC's seal to promote their offering. None of that is true: the SEC has in no way approved, authorized or otherwise endorsed defendants, their entities, nor their ICO. Defendants also claim they are "partnered" with and "audited by" Deloitte Touche Tohmatsu Limited ("Deloitte")—which they are not.

3.      To carry out this scheme, Ringgold created a fictitious regulatory agency, the "Blockchain Exchange Commission," or "BEC," which he claims "regulates" the "Blockchain Digital Asset Space," supposedly to "protect" digital asset investors. But the BEC is not a regulator at all. It falsely conjures similarities to the SEC: its logo is similar to the SEC's; its mission statement is cribbed from the SEC's own; and its offices share the same address as SEC headquarters. The Blockvest website links directly from the BEC seal to the SEC's website. Ringgold promotes the Blockvest offering and the BEC side-by-side, further conveying a false veneer of legitimacy to the Blockvest ICO.

4.      In reality, defendants have neither the regulatory "approvals," nor the established business relationships they claim. The BLV offering is not "U.S. SEC

2

1  approved," nor approved by any other U.S. financial regulator.  The BEC has no

2  affiliation with the SEC, and Blockvest is not affiliated with the name-brand

3  companies whose logos appear in its marketing materials.  Investors' assets therefore

4  lack the safety or protections that defendants are falsely portraying in their ongoing

5  scheme to raise money through Blockvest's planned ICO and ongoing pre-sales.

6        5.      Unless restrained and enjoined, Ringgold is scheduled to appear at

7  two "VCs, Angels, Crypto and ICOs" events in Los Angeles on October 9, 2018

8  and in Orange County on October 11, 2018, where he will likely continue

9  promoting Blockvest and the BEC in order to raise additional monies from

10  investors through his fraudulent misrepresentations and scheme to defraud—

11  including for Blockvest's intended December 2018 ICO.

12        6.      By lying to investors and perpetrating a fraudulent scheme through the

13  Blockvest ICO, each of the defendants is violating the antifraud provisions of

14  Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of

15  the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder,

16  as well as the securities offering registration provisions of Section 5 of the

17  Securities Act.

18        7.      The SEC seeks orders temporarily, preliminarily and permanently

19  enjoining defendants from violating the securities laws; an order temporarily,

20  preliminarily and permanently enjoining Ringgold from participating in an offering

21  of digital or other securities or making misrepresentations regarding regulatory

22  approval in connection with such offerings; orders freezing defendants' assets;

23  requiring accountings from defendants; and prohibiting the destruction of

24  documents; as well as disgorgement of defendants' ill-gotten gains and civil

25  monetary penalties against defendants.

26                          **JURISDICTION AND VENUE**

27        8.      The Court has jurisdiction over this action pursuant to Sections 20(b),

28                                      3

20(d)(1), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a).

9.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

10.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because defendant Ringgold resides in this district and defendant Blockvest has its principal place of business in this district.

## THE DEFENDANTS

11.     **Blockvest LLC** was formed in Wyoming in April 2018 and is based in San Diego.  It is a private company that purports to provide various digital asset-related financial products and services, for which it is raising funds through the sale of BLVs.  Blockvest uses the website www.blockvestico.io.  Blockvest is not and has never been registered with the SEC in any capacity.  Blockvest registered as a Commodity Trading Advisor ("CTA") with the Commodity Futures Trading Commission ("CFTC") on July 24, 2018.

12.     **Reginald Buddy Ringgold, III, aka Rasool Abdul Rahim El,** age 34, is a resident of San Diego.  Ringgold is a self-described "Financial Markets Investment Coach" and "professor," who claims to have over 17 years of experience in the financial industry as an investment adviser, trader, and investment banker.  Ringgold claims to be the founder of Blockvest.  He is listed as

the executive officer and sole related person of Blockvest in a Form D filed with the SEC for the BLV offering (claiming exemption from SEC securities offering registration requirements), which he signed.  He also holds himself out, in his online biographies and in his LinkedIn profile, as the principal of various affiliated entities including the BEC, Blockchain Investment Group LLC ("BIG"), Rosegold Investments LLP ("Rosegold"), and Master Investment Group, Inc. ("MIG"), which are referenced as providing services for Blockvest or otherwise featured as partners on Blockvest's website and whitepaper.  Since at least 2010, Ringgold has used the alias Rasool Abdul Rahim El in connection with, among other things, opening accounts at several financial institutions.  Ringgold uses the website www.reginaldringgold.com.  Ringgold has never been registered with the SEC or the CFTC in any capacity under either his name or his alias, nor has he been associated with any registered firms in the securities industry.

## RELATED ENTITES

13.     The **Blockchain Exchange Commission, LLC** was formed in Wyoming and is based in San Diego.  Ringgold claims to be the founding member of the BEC.  The BEC is a private company that purports to be a regulatory organization which, among other things, oversees digital asset trading platforms and ICOs.  The company was originally formed as Fartlife LLC in January 2015, changed its name to Smartlife in 2017, then changed its name to the BEC in May 2018.  The BEC uses the website www.blockchainexchangecommission.org.  The BEC is not registered with the SEC or the CFTC in any capacity.

14.     **Blockchain Investment Group LLC** was formed in Wyoming in March 2018 and is based in San Diego.  A limited liability partnership with a similar name ("Blockchain Investment Group LLP") was formed at or around the same time.  Ringgold claims to be the founding partner of BIG (and the related LLP).  BIG is a private company that purports to provide investment banking

services to blockchain-related companies.  It also purports to manage Blockvest's planned digital asset fund and is listed as a principal of Blockvest with the CFTC. BIG uses the website www.blockchaininvestmentgrp.com.  BIG is registered with the Financial Crimes Enforcement Network as a money service business.  Neither BIG nor the related LLP is registered with the SEC or the CFTC in any capacity.

15.     **Rosegold Investments LLP**, aka Rosegold Investments Trust, was formed in Delaware in April 2017 and is based in San Diego.  Ringgold claims to be Rosegold's founder, managing partner, and chief investment officer.  At times, Ringgold also describes Rosegold as a California trust.  Rosegold purports to provide investment banking and advisory services.  Rosegold uses the website www.rosegoldinvestments.com.  Neither Rosegold nor the related trust is registered with the SEC or CFTC in any capacity.

16.     **Master Investment Group, Inc.** was formed in California in March 2017 and is based in San Diego.  Ringgold claims to be MIG's founder and managing partner.  MIG purports to provide portfolio management services.  MIG uses the website www.masterinvestmentllp.com.  MIG is not registered with the SEC or the CFTC in any capacity.

17.     Ringgold is not listed on the company formation or incorporation documents for the BEC, BIG, Rosegold, or MIG, but these entities share common personnel and common addresses connecting the entities to Ringgold.  Blockvest's CFO is listed on company documents as the CEO of MIG and the CFO of BIG, and another one of Ringgold's associates is listed as both the Assistant Secretary of the BEC and as the CFO of MIG.  The BEC, MIG, BIG, and Rosegold all use a San Diego address that Blockvest and Ringgold also use:  5694 Mission Center Road, Suite 489, San Diego, CA—which is a UPS store.

1

## **FACTUAL ALLEGATIONS**

2

### **A.    Background on Initial Coin Offerings**

3      18.    An initial coin offering or "ICO" is a fundraising event in which an

4  entity offers participants a unique "coin" or "token" or "digital asset," in exchange

5  for consideration, often in the form of virtual currency—most commonly Bitcoin

6  and Ether—or fiat currency.

7      19.    The digital assets are issued on a "blockchain" or cryptographically

8  secured ledger.

9      20.    A blockchain is a type of distributed ledger, or peer-to-peer database

10  spread across a network, that records all transactions in the network in theoretically

11  unchangeable, digitally-recorded data packages called blocks.  Each block contains

12  a batch of records of transactions, including a timestamp and a reference to the

13  previous block, linking the blocks together in a chain.  The system relies on

14  cryptographic techniques for secure recording of transactions.  A blockchain can

15  be shared and accessed by anyone with appropriate permissions.  The Bitcoin

16  blockchain is an example of a "non-permissioned," or public and open access

17  blockchain.  Anyone can download the Bitcoin open-source software and join.  All

18  participants share a single view of the Bitcoin blockchain, which is updated when

19  Bitcoin network participants reach a consensus on the validity of transactions

20  under review.  "Permissioned" or private blockchains are modifications to that

21  model and require permissioned servers to be approved to participate on the

22  network or to access particular information on the blockchain.  Blockchains or

23  distributed ledgers can also record what are called smart contracts, which

24  essentially are computer programs designed to execute the terms of a contract

25  when certain triggering conditions are met.

26      21.    Generally, digital assets issued in an ICO entitle holders to certain

27  rights related to a venture underlying the ICO, such as rights to profits, shares of

28

1    assets, rights to use certain services provided by the issuer, and/or voting

2    rights.  These digital assets may also be listed on online platforms, often called

3    virtual currency exchanges, and tradeable for virtual or fiat currencies.  Often, the

4    digital assets are immediately tradeable.

5         22.    ICOs are typically announced and promoted through public online

6    channels.  Issuers usually release a "whitepaper" describing the offering and the

7    terms of the ICO.  To participate, investors are generally required to transfer funds

8    (often virtual currency) to the issuer's address, online wallet, or other

9    account.  After the completion of the ICO, the issuer distributes its unique digital

10   assets, commonly known as "tokens," to the participants' unique addresses on the

11   blockchain.

12        23.    On July 25, 2017, the SEC issued a Report of Investigation pursuant

13   to Section 21(a) of the Exchange Act that put the digital-asset industry on notice

14   that many digital assets are securities and subject to the federal securities laws and

15   the registration requirements, regardless of whether the issuing entity is a

16   traditional company or a distributed ledger or blockchain-enabled means of capital

17   raising, regardless of whether the securities are purchased with U.S. dollars or

18   virtual currencies, and regardless of whether the securities are distributed in

19   certificated form or through distributed ledger technology.

20   **B.    The Blockvest Pre-Sales and ICO**

21        **1.    Blockvest's purported business**

22        24.    Blockvest purports to be a financial services company that, using

23   blockchain technology, "aims to solve one of the biggest problems in the

24   cryptocurrency industry—volatility" as well as the "problems of trust and

25   custodianship."

26        25.    In or around February 2018, Blockvest issued a whitepaper, available

27   on its webpage, for the sale of BLVs, which purport to be digital assets issued

28                                           8

1    pursuant to a smart contract developed using the Ethereum Blockchain.

2         26.    According to the whitepaper and the Blockvest website, Blockvest is

3    developing four products, which will be funded by its planned ICO:

4              a. "Blockvest30":  purportedly a cryptocurrency index fund managed

5                 by BIG, using a "proprietary trading strategy for trading all asset

6                 classes;"

7              b. "Yields":  purportedly a digital currency described as a

8                 "stablecoin," supposedly linked to the U.S. dollar, and also

9                 described as a "digidend;"

10             c. The "Blockvest Interface":  purportedly an automated "investment

11                portfolio structuring and management" tool; and

12             d. The "Blockvest Decentralized Exchange" or "DEX":  purportedly

13                "a Bloomberg for crypto economics" on which BLV holders will

14                have the ability to track digital asset prices, follow market news,

15                and acquire and sell digital assets through other "major

16                cryptocurrency exchanges."

17        27.    Based on Blockvest's website, none of the foregoing products are yet

18   operational; Blockvest showed a demo version of the DEX at an August 2018

19   digital assets conference.

20        28.    Blockvest's website and whitepaper reflect that it will receive certain

21   services from BIG, Rosegold, and MIG.

22              **2.    Defendants' promotions and sales of the BLVs**

23        29.    Blockvest first issued BLVs, priced at $1 per token, in a transfer dated

24   March 30, 2018.

25        30.    Since March 30, 2018, Blockvest has been conducting BLV sales in

26   two tranches:  (1) a "private sale" with a 50% bonus that ran through April 30,

27   2018; and (2) an ongoing "pre-ICO" or "Testing the Waters Phase" with a 20%

28                                    9

1   bonus from July 1, 2018 through October 6, 2018. These sales lead up to a "global
2   ICO" that is planned for December 1, 2018.

3       31.    Between early 2018 and the present, Blockvest also has conducted
4   several "bounty programs," giving BLVs in exchange for favorable social media
5   posts concerning the company, which have been advertised on Blockvest's social
6   media accounts.

7       32.    According to Blockvest's website and whitepaper, Blockvest has
8   capped the supply of BLVs at 100 million, with plans to issue 50 million of the
9   tokens during the pre-ICO and ICO.

10       33.    Also according to the website and whitepaper, the company will issue
11   32.5 million of the tokens to investors, setting aside 10 million for management, 5
12   million for "Core Activities Reserves," and 2.5 million for promotional incentives.

13       34.    The company also claims on its website and whitepaper that it is
14   planning an initial *public* offering, or IPO, (separate from the ICO) of unspecified
15   securities in 2019.

16       35.    Since early 2018, Blockvest has been promoting its pre-ICO and ICO
17   through Blockvest's whitepaper, the websites for Blockvest, BIG, and Ringgold,
18   and social media accounts held by Blockvest and Ringgold.

19       36.    Also since early 2018, Ringgold has been appearing at various
20   blockchain conferences to tout Blockvest, and posting videos of these appearances
21   online.

22       37.    On or about May 8, 2018, Blockvest claimed on social media
23   channels to have raised $2.5 million through the sale of BLVs, within seven days
24   of the commencement of the pre-ICO sales.

25       38.    By on or about September 17, 2018, Blockvest represented on its
26   website that it had sold 18% of the BLVs being offered, or roughly 9 million
27   tokens.

28                                10

39.     Ethereum Blockchain data reflects that between March 30 and September 26, 2018, Blockvest issued over 10 million tokens in 266 transfers.

### 3.     Blockvest's and Ringgold's concessions that BLVs are securities

40.     Blockvest's Form D filing with the SEC, its promotional materials, and Ringgold's public statements reflect defendants' understanding that BLVs are securities.

41.     Under Section 5 of the Securities Act, any offer or sale of a security must either be registered with the SEC or meet an exemption. Securities Act Regulation D [17 C.F.R. §§ 230.500 *et seq.*] provides a number of exemptions from the registration requirements, allowing some companies to offer and sell their securities without having to register the offering with the SEC.

42.     When relying on such an exemption, companies must file what is known as a "Form D" after they first sell their securities. Form D is a brief notice that includes basic information about the company and the offering.

43.     One of the exemptions provided for in Regulation D, Rule 506(c), provides that a company can broadly solicit and generally advertise the offering and still be deemed to be in compliance with the exemption's requirements if: (1) the investors in the offering are all accredited investors; and (2) the company takes reasonable steps to verify that the investors are accredited investors.

44.     On April 16, 2018, Blockvest filed a Form D for a $100 million dollar securities offering of BLVs, claiming an exemption from registration under Securities Act Regulation D, Rule 506(c).

45.     On information and belief, Blockvest does not take reasonable steps to ensure that BLV investors are accredited.

46.     Although Blockvest filed a Form D with the SEC for a Regulation D registration exemption, its website instead invokes Securities Act Regulation A.

47.     SEC Regulation A [17 C.F.R. §§ 230.251 *et seq.*] constitutes an exemption from Section 5 registration and is limited to eligible issuers as defined in the regulation.  On March 25, 2015, the SEC amended Regulation A pursuant to Section 401 of the Jumpstart Our Business Startups (JOBS) Act of 2012 [15 U.S.C. § 77c(b)(2)-(5)].  Section 401 directed the SEC to adopt rules expanding the previous Regulation A by, among other things, exempting public offerings of up to $50 million annually (Regulation A, as amended, is commonly known as "Regulation A+").

48.     Under Regulation A, issuers must comply with different regulatory requirements depending on whether the offering is a Tier 1 offering for up to $20 million in proceeds or a Tier 2 offering for up to $50 million. In either case, no sale of a security may occur under Regulation A until (1) the issuer has filed an offering statement on Form 1-A with the Commission and (2) the Commission has issued a notice of qualification.

49.     Blockvest's website states (falsely) that "[t]he company is now SEC Reg A+ compliant and can *offer their securities offering to Unaccredited Investors* all over the globe."  (Emphasis added.)

50.     Likewise, on or about June 23, 2018, Ringgold claimed during a presentation at the "Blockchain Economic Forum" ("BE Forum"), a video of which he posted online, "Since we got our Reg A, we are able to take on investors from pretty much everywhere for any amount. *They don't have to be accredited*." (Emphasis added.)

51.     Blockvest has not filed a Form 1-A offering statement for a Regulation A securities offering, nor has any offering been qualified by SEC staff as required by Regulation A.

52.     On or about July 29, 2018, Ringgold stated during a presentation at the "Digital Currency Con" ("DC Con"), a video of which he posted online:  "The

1 | SEC says it's a security so we registered with the SEC."

> **4.     Representations regarding expected profits and income from the efforts of Blockvest, BIG, and their management**

53.     Blockvest's whitepaper and online materials represent that the Blockvest30 and other Blockvest products and services will provide returns based on the purported skill of Blockvest's and BIG's management.

54.     For example, Blockvest's website and other online materials highlight the supposed decades of financial industry experience of a 21-person management team.

55.     In particular, the posted biography for "Prof. Ringgold" claims he "[o]verses all aspects of operations and important strategic decisions for [BIG]."

56.     Blockvest's Facebook page claims Ringgold has "over 17+ years of experience in the financial markets and has been a full-time financial trader for several years trading the European, US and Asian markets."  (The post does not allude to Ringgold's age, which is 34).

57.     Blockvest's whitepaper emphasizes BIG's "proprietary trading strategy" as the driver of steady profits for the Blockvest30, and states that "Blockchain Investments targets returns between 12% to 25% per annum."

58.     Blockvest's online materials also promise that BLV holders will share in the profits of the Blockvest30 and other ventures.

59.     For example, Blockvest's whitepaper states, "As a Blockvest token holder, your Blockvest will generate a pro-rated share of 50% of the profit generated quarterly as well as fees for processing transactions."

60.     The whitepaper also states that, "The BLV token is a novel decentralized asset, whose intrinsic value is derived from the fees generated in the network it collateralizes as well as the right to receive quarterly earnings from the performance of the Blockchain Investments Fund."

61.   Blockvest's website states that "[s]imilar to a mutual fund, BlockVest [*sic*] is a closed-end hybrid fund with a profit-sharing smart contract that pays quarterly digital dividends."

62.   Next to the logo for Vanguard Investments ("Vanguard"), which was used without the knowledge or permission of Vanguard, Blockvest's website states that, "Similar to a mutual fund[,] Blockvest is a closed-end hybrid fund with a profit-sharing smart contract that pays quarterly digital dividends."

63.   Further, Blockvest's promotional materials state that BLV investors will earn "passive" income simply by holding their BLVs in Blockvest's digital wallets, referred to as "Investornodes" or "Nvestnodes."

64.   For example, Blockvest's website states:  "Blockvest Nvestnodes generate passive income through asset backed profit sharing smart contracts. . . . The company is proud to introduce the Token-As-Fund business model, which allows investors to subscribe to the fund's income stream."

65.   According to the Blockvest website, "Simply holding 1000 BLV in an Nvestnode generates passive income thru [*sic*] fees."

C.   **Defendants' Material Misrepresentations and Omissions**

1.   **False claims regarding regulatory approvals**

66.   Blockvest and Ringgold are falsely representing to investors that Blockvest, the ICO, the Blockvest30, and/or the Blockvest DEX, have obtained regulatory "approval," most notably misleading potential investors that Blockvest and its ICO are "approved" by the SEC.

67.   A reasonable investor in the Blockvest offering would consider important the truth about the regulatory and registration status of Blockvest, its affiliates, and its ICO.

a.   **False claims regarding SEC "approval"**

68.   Since the Blockvest whitepaper was issued in February 2018 and

continuing through the present, Blockvest and Ringgold have falsely stated on numerous instances that Blockvest, its planned products, or the ICO are "approved" by the SEC.

69.    Blockvest's whitepaper describes its ICO as an "***SEC Reg A+ Securities Offering Approved***." (Emphasis added.)

70.    Blockvest's website falsely states that: "Blockvest is a ***U.S. SEC approved platform*** that doubles as a decentralized cryptocurrency exchange as well as a hedge fund." (Emphasis added.)

71.    Blockvest's public Facebook page likewise falsely states that: "Blockvest is a ***U.S. SEC approved platform*** . . . ." (Emphasis added.)

72.    Blockvest's website additionally reflects as a milestone in its development the following: "Blockvest DEX GETS ***SEC REG A+ APPROVAL*** & PLANS TO 'TEST THE WATERS' WITH IPO." (Emphasis added.)

73.    In or about June 2018, Ringgold falsely stated at a blockchain conference, the BE Forum: "Good news, we just got our ***Reg A approval from the SEC***." (Emphasis added.)

74.    In or about July 2018, Ringgold falsely stated at another blockchain conference, the DC Con: "The SEC says it's a security so ***we registered with the SEC***" (emphasis added) and that:

> "Now, we have the 'JCO' – JOBS Crypto Offering - … a
> combination of Reg A, Reg A+, a little sprinkle of Reg S.
> It keeps you out [of] 'Reg Jail.'"

75.    Blockvest, BIG, and Ringgold are not registered with the SEC in any capacity.

76.    The BLV offering, the Blockvest30, and the Blockvest DEX are not registered with or "approved" by the SEC.

### b.   False claims regarding other regulatory approvals

77.   Blockvest and Ringgold also are making numerous misleading statements about supposed CFTC and National Futures Association ("NFA") approval, despite the NFA issuing a cease-and-desist letter to Blockvest on June 26, 2018.

78.   The NFA is the industrywide, self-regulatory organization for the United States derivatives industry.  The NFA is designated by the CFTC as a registered futures association.  The Commodity Exchange Act, as amended, requires certain firms and individuals that conduct business in the derivatives industry to register with the CFTC.  CFTC regulations also require, with few exceptions, CFTC-registered firms and individuals to be NFA members.  The CFTC has delegated registration responsibility to NFA.

79.   Blockvest's website falsely states that: "'***Under the helpful eye of the CFTC and NFA***, we look forward to providing certain qualified investors access to this evolving market', the Fund will be managed by Blockchain Investment Group, LLP, a commodity pool operator registered with the [CFTC] and a member of the [NFA]."  (Emphasis added, internal quotes in original.)

80.   While Blockvest was registered as a CTA in July 2018, BIG and the similarly-named "Blockchain Investment Group LLP" have never been registered as commodity pool operators with the CFTC.

81.   Ringgold's website states that Rosegold is "a CFTC registered Commodity Trading Advisor firm."

82.   Neither Rosegold nor Ringgold are registered with the CFTC in any capacity.

83.   Blockvest's website misrepresents that one of the company's management members—"Chief Marketing Strategist" George B. Freeman—is "licensed with FINRA/NFA."

16

84.     According to NFA and SEC records, Freeman has not been registered with the CFTC since October 2014 and has never been registered with the SEC or FINRA in any capacity.

85.     On June 26, 2018, the NFA sent Blockvest a cease-and-desist letter directing the company to stop to stop falsely claiming or implying membership with or regulation by the NFA.

86.     In particular, the letter demanded that Blockvest remove the language on its website about being "under the helpful eye of the CFTC and NFA" and stop its unauthorized and misleading use of the NFA logo.

87.     The same date, Blockvest's chief financial officer emailed a response to the NFA, stating that "we intend to take every step to be fully compliant to NFA membership requirements."

88.     As of this filing, however, Blockvest had not removed the NFA's logo, the offending language about the regulators' "helpful eye," nor the other misleading representations about regulatory status on Blockvest's or Ringgold's websites.

### 2.     Fake affiliation with Deloitte

89.     Blockvest and Ringgold also are falsely representing to investors that Blockvest is associated with public accounting firm, Deloitte.

90.     Blockvest's website falsely states that, "Blockchain Investment Funds will be ***Audited [sic] by Deloitte***, as we plan to use Stratumn's Indigo Trace platform this allows BLV Funds [*sic*] to become truly transparent." (Emphasis added.)

91.     Blockvest and Ringgold also have disseminated online a video titled "ICO Overview," which falsely states that: ". . . we have ***partnered with Deloitte*** and have built an innovative cryptographic audit technology." (Emphasis added.)

92.     Deloitte has no current or past business relationship with Blockvest or

17

1   any related entities or individuals, including Ringgold, nor any knowledge of a

2   relationship between Deloitte and Blockvest or any related entities or individuals,

3   including Ringgold.

4       93.    That Blockvest, BIG, and Ringgold do not have any relationship with

5   Deloitte would have been important to a reasonable investor in the offering.

6              **3.    Defendants' roles in the misstatements**

7       94.    As alleged above, Ringgold personally made the false and misleading

8   statements alleged above about fictitious regulatory approvals and affiliation with

9   Deloitte.

10       95.    These false and misleading claims are also found in Blockvest's

11   online materials.

12       96.    As Blockvest's principal, Ringgold has control and ultimate authority

13   over the content of Blockvest's online materials.

14       97.    Ringgold knew, or was reckless in not knowing, that neither

15   Blockvest, its affiliated entities, its ICO, nor any of its planned products are in any

16   way registered with nor approved by the SEC.

17       98.    Ringgold knew, or was reckless in not knowing, that neither the

18   Blockvest ICO nor the Blockchain Investment Group LLP are in any way

19   registered with nor approved by the CFTC nor the NFA.

20       99.    Ringgold knew, or was reckless in not knowing that neither he,

21   Blockvest, nor its affiliated entities have any relationship with Deloitte, and he also

22   knew, or was reckless in not knowing that neither Blockvest nor BIG have any

23   agreement for Deloitte's auditing services.

24       100.   Ringgold also acted without reasonable care in claiming to have

25   nonexistent regulatory approvals.

26       101.   Ringgold also acted without reasonable care in claiming that

27   Blockvest or BIG are partnered with Deloitte or have any agreement for Deloitte's

28                                    18

1  auditing services, when they do not.

2      102.   Ringgold's scienter and his negligence are imputed to Blockvest since

3  he is its founder and principal.

4      **D.    Defendants' Scheme to Defraud**

5      103.   In addition to the misrepresentations above, Blockvest and Ringgold

6  perpetuate an illusion that that the BLV investment is safe and legitimate by

7  misusing the SEC's and others' seals and logos, and through the pretense that is the

8  BEC.

9      104.   That neither defendants nor the BEC are in any way affiliated with the

10  SEC (including, not being located at SEC headquarters and not having the SEC's

11  website address), nor with the CFTC, the NFA, or Deloitte, would have been

12  important to a reasonable investor in the offering.

13      **1.    The improper use of seals and logos of the SEC and others**

14      105.   Blockvest and BIG display the SEC's seal and NFA's logo on their

15  webpages, amongst other purported partners or affiliates.

16      106.   At the DC Con conference in July 2018, Ringgold's slide show that

17  accompanied his remarks displayed the SEC's seal, the NFA's logo, and the

18  CFTC's seal.

19      107.   Blockvest's website also displays the logo of audit firm Deloitte under

20  its list of supposed partners, and the logo of Vanguard in connection with a

21  description of the Blockvest30.

22      108.   Neither Blockvest nor BIG are authorized to use the SEC's or the

23  CFTC's seal.

24      109.   Defendants are also not authorized to use the NFA's, Deloitte's or

25  Vanguard's logos.

26      110.   Blockvest's website also does not clarify that the use of the SEC seal

27  does not—and cannot—convey registration with the SEC or "approval" of their

28                                          19

1    companies or the BLV offering.

2        111.   The SEC does not "approve" securities or otherwise endorse products,

3    nor does the SEC authorize use of its seal.  For example, on April 3, 2015, the SEC

4    issued an Investor Alert stating, "*The SEC does not 'approve' or 'endorse' any*

5    *particular securities, issuers, products, loans, services, professional credentials,*

6    *firms or individuals, and does not allow private entities to use its government*

7    *seal*."  (Emphasis in original.)

8            **2.   The use of the fictitious BEC**

9        112.   At around the same time as he founded Blockvest, Ringgold launched

10   the BEC as a purported regulatory agency that mimics the SEC in numerous ways.

11       113.   In May 2018, roughly one month after filing the Form D for the BLV

12   offering with the SEC, Ringgold created the BEC, renaming a company that had

13   been previously incorporated under various names including "Fartlife."

14       114.   BEC claims to charge members fees for joining (between $5,000 to

15   $50,000 depending on membership level).

16       115.   The BEC has attributes that are confusingly similar to the SEC.

17       116.   The BEC's publicly available LinkedIn webpage states that:  "The

18   mission of the BEC is to protect investors; maintain fair, orderly, and efficient

19   markets within the Blockchain Digital Asset Space; and facilitate capital

20   formation."

21       117.   The SEC's webpage, www.SEC.gov, under the tab "About/What We

22   Do," states that: "The mission of the SEC is to protect investors; maintain fair,

23   orderly, and efficient markets; and facilitate capital formation."

24       118.   The BEC's logo, displayed on Blockvest's website and by Ringgold at

25   various conferences, is a picture of an eagle, its head turned to the left, with the

26   words "Blockchain Exchange Commission" across the top of the eagle's

27   upstretched wings and the roman numerals MMXV below the eagle:

28                           20



119.   The SEC's seal is a picture of an eagle, its head turned to the left, with the words "U.S. Securities and Exchange Commission" across the top of the eagle's upstretched wings and the roman numerals MCMXXXIV below the eagle:

120.   The BEC's LinkedIn webpage lists the BEC's address as at 100 F Street Northeast, Washington, D.C. 20549.

121.   The SEC's headquarters address is 100 F Street Northeast, Washington, D.C. 20549.

122.   Blockvest's website displays the BEC logo; however, the hyperlink contained in the BEC logo on the Blockvest website does not link to the BEC's website, but, as of September 17, 2018, to the SEC's website.

123.   In addition to displaying the BEC's logo on the Blockvest website, from early 2018 to the present, Ringgold has touted the BEC where he promotes Blockvest, online and at conferences.

124.   Since the BEC's inception, Ringgold has touted that he is a BEC founder while also promoting Blockvest.

125.   In a July 2018 interview on a social media platform, Ringgold discussed both Blockvest and BIG stating, "I would like to announce the official launch of the Blockchain Exchange Commission (BEC), an independent digital securities regulatory compliance firm involved in mitigating regulatory risk including US and Canadian securities/banking compliance."

126.   Ringgold has arranged for the BEC to be a co-sponsor of digital asset conferences, alongside Blockvest, furthering the false impression that Blockvest is affiliated with a "self-regulatory organization."

127.   Blockvest's public Facebook page contains a post attributed to Ringgold with a link to Ringgold's presentation at the July 2018 DC Con, where he discussed Blockvest and the BEC and displayed logos for both the BEC and Blockvest.

128.   In his DC Con presentation, Ringgold stated, "One thing we've done with the Blockchain Exchange Commission is we are introducing the KYI. Write that down. Know your issuer."

### 3.   Defendants' roles in the scheme

129.   Ringgold knew, or was reckless in not knowing, that it was misleading to use the SEC and CFTC seals without authorization in order to promote Blockvest, its affiliates and its ICO.

130.   Ringgold knew, or was reckless in not knowing, that it was misleading to use the logos of the NFA and Deloitte without authorization in order to promote Blockvest, its affiliates and its ICO.

131.   Ringgold knew, or was reckless in not knowing, that it was misleading to use the fictitious regulatory body, the BEC, in promoting Blockvest, its affiliates and its ICO.

132.   Ringgold also acted without reasonable care in using the seals of the SEC and CFTC, and the logos of the NFA and Deloitte, all without authorization.

22

133.   He further acted without reasonable care in using the BEC to promote his companies and the Blockvest ICO.

**E.   Blockvest's Offerings of Digital Assets Were Not Registered with the SEC**

134.   Federal securities laws require that companies disclose certain information through the registration of the offer or sale of securities with the SEC. This information allows investors to make informed judgments about whether to purchase a company's securities.

135.   The Blockvest ICO is an offering of securities, in the form of the BLV digital assets, which must be registered with the SEC unless an exemption applies.

136.   The Blockvest ICO is not registered with the SEC.

137.   Defendants' offer and sale of BLVs was not registered with the SEC in any way.

138.   No registration exemption applies to the Blockvest ICO.

139.   Although Blockvest has filed a Form D with the SEC, the BLV offering is not exempt from registration under Regulation D.  The ICO is not limited by number of investors, or investor accreditation status.

140.   Blockvest is also offering and selling securities in the form of the BLV digital assets to the general public, including to investors throughout the United States.

141.   Likewise, while Blockvest claims on its website that its offering is Regulation A "compliant," the ICO has not been qualified as a Regulation A offering, as is required under the regulation.

142.   Blockvest is the issuer of the BLVs.  Blockvest claims to have raised $2.5 million and to have sold 9 million BLVs in pre-ICO offers and sales.

143.   Ringgold is an active participant and has a necessary role in the sale of BLVs.  He is Blockvest's founder and public face, and actively promotes the

23

1   BLV investment online and in-person.

2   **FIRST CLAIM FOR RELIEF**

3   **Fraud in Connection with the Purchase or Sale of Securities**

4   **Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder**

5   **(Against All Defendants)**

6   144.   The SEC realleges and incorporates by reference paragraphs 1

7   through 143 above.

8   145.   Defendants Blockvest and Ringgold made material misrepresentations

9   and omissions to investors and prospective investors regarding Blockvest's ICO.

10   Defendants misrepresented that the ICO was "registered" with or "approved" by

11   the SEC even though defendants were not registered in any capacity with the SEC

12   or in any way "approved."  Defendants also misrepresented the regulatory status of

13   the ICO, BIG, and Blockvest's management with respect to the CFTC and NFA,

14   and continued to do so even after the NFA issued Blockvest a cease-and-desist

15   letter.  Defendants also misrepresented that Blockvest had an affiliation with

16   Deloitte, which it did not have.  Defendants knew or were reckless in not knowing

17   that these statements were false.

18   146.   By engaging in the conduct described above, each of the defendants

19   directly or indirectly, in connection with the purchase or sale of a security, and by

20   the use of means or instrumentalities of interstate commerce, of the mails, or of the

21   facilities of a national securities exchange, with scienter, made untrue statements of

22   a material fact or omitted to state a fact necessary in order to make the statements

23   made, in the light of the circumstances under which they were made, not

24   misleading.

25   147.   By engaging in the conduct described above, defendants Blockvest

26   and Ringgold violated, and unless enjoined will continue to violate, Section 10(b)

27   of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R.

28

§ 240.10b-5(b).

## SECOND CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities
### Violations of Section 10b of the Exchange Act
### And Rules 10b-5(a) and 10b-5(c) Thereunder
### (Against All Defendants)

148.   The SEC realleges and incorporates by reference paragraphs 1 through 143 above.

149.   Defendants Blockvest and Ringgold participated in activities with the principal purpose and effect of creating a false appearance regarding Blockvest and its ICO. Specifically, they create the false appearance that an investment in the Blockvest ICO is safe and legitimate by perpetuating the illusion that the offering has been registered with and approved by regulators, often using the SEC seal in Blockvest's promotional materials. Ringgold also created the BEC, a purported regulatory agency, to promote Blockvest online and at conferences, giving the false appearance that Blockvest and its ICO have some legitimacy. Defendants knowingly or recklessly employed these devices, schemes, or artifices to defraud; and engaged in these transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers.

150.   By engaging in the conduct described above, each of the defendants, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

151.   By engaging in the conduct described above, defendants Blockvest and Ringgold violated, and unless enjoined will continue to violate, Section 10(b)

of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and 10b-5(c)

thereunder, 17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c).

### THIRD CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a)(2) of the Securities Act**

**(Against All Defendants)**

152.    The SEC realleges and incorporates by reference paragraphs 1
through 143 above.

153.    Defendants Blockvest and Ringgold obtained money or property by
means of material misrepresentations and omissions to investors and prospective
investors regarding Blockvest's ICO. Defendants misrepresented that the ICO was
"registered" with or "approved" by the SEC even though defendants were not
registered in any capacity with the SEC or in any way "approved." Defendants
also misrepresented the regulatory status of the ICO, BIG, and Blockvest's
management with respect to the CFTC and NFA, and continued to do so even after
the NFA issued Blockvest a cease-and-desist letter. Defendants also
misrepresented that Blockvest had an affiliation with Deloitte, which it did not
have. Defendants have obtained at least $2.5 million of investor funds, and/or the
investment in 9 million BLV tokens, through their misstatements and omissions.
Defendants made these statements knowingly or recklessly, and without exercising
the reasonable duty of care as to whether they were false.

154.    By engaging in the conduct described above, each of the defendants,
directly or indirectly, in the offer or sale of securities, and by the use of means or
instruments of transportation or communication in interstate commerce or by use
of the mails directly or indirectly, with knowingly, recklessly, or negligently
without exercising the reasonable duty of care, obtained money or property by
means of untrue statements of a material fact or by omitting to state a material fact

1  necessary in order to make the statements made, in light of the circumstances

2  under which they were made, not misleading.

3      155.  By engaging in the conduct described above, defendants Blockvest

4  and Ringgold violated, and unless enjoined will continue to violate, Section

5  17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

6                    **FOURTH CLAIM FOR RELIEF**

7                  **Fraud in the Offer or Sale of Securities**

8      **Violations of Section 17(a)(1) and 17(a)(3) of the Securities Act**

9                        **(Against All Defendants)**

10     156.  The SEC realleges and incorporates by reference paragraphs 1

11  through 143 above.

12     157.  Defendants Blockvest and Ringgold participated in activities with the

13  principal purpose and effect of creating a false appearance regarding Blockvest and

14  its ICO.  Specifically, they create the false appearance that an investment in the

15  Blockvest ICO is safe and legitimate by perpetuating the illusion that the offering

16  has been registered with and approved by regulators, often using the SEC seal in

17  Blockvest's promotional materials.  Ringgold also created the BEC, a purported

18  regulatory agency, to promote Blockvest online and at conferences using the BEC,

19  giving the false appearance that Blockvest and its ICO have some legitimacy.

20     158.  By engaging in the conduct described above, each of the defendants,

21  directly or indirectly, in the offer or sale of securities, and by the use of means or

22  instruments of transportation or communication in interstate commerce or by use

23  of the mails directly or indirectly: knowingly or recklessly employed devices,

24  schemes, or artifices to defraud; and negligently without exercising the reasonable

25  duty of care engaged in transactions, practices, or courses of business which

26  operated or would operate as a fraud or deceit upon the purchaser.

27     159.  By engaging in the conduct described above, defendants Blockvest

28                                27

1   and Ringgold violated, and unless enjoined will continue to violate, Sections

2   17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) and 77q(a)(3).

3                              **FIFTH CLAIM FOR RELIEF**

4                        **Unregistered Offer and Sale of Securities**

5                  **Violations of Sections 5(a) and 5(c) of the Securities Act**

6                                 **(Against All Defendants)**

7          160.   The SEC realleges and incorporates by reference paragraphs 1

8   through 143 above.

9          161.   Defendants Blockvest and Ringgold directly or indirectly offered and

10  sold Blockvest's BLV securities in offerings that are not registered with the SEC

11  and that are not subject to a valid exemption to registration.

12         162.   By engaging in the conduct described above, defendants Blockvest

13  and Ringgold, directly or indirectly, singly or in concert with others, have made

14  use of the means or instruments of transportation or communication in interstate

15  commerce, or of the mails, to offer to sell or to sell securities, or carried or caused

16  to be carried through the mails or in interstate commerce, by means or instruments

17  of transportation, securities for the purpose of sale or for delivery after sale, when

18  no registration statement had been filed or was in effect as to such securities, and

19  when no exemption from registration was applicable.

20         163.   By engaging in the conduct described above, defendants Blockvest

21  and Ringgold violated, and unless enjoined will continue to violate, Sections 5(a)

22  and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c)

23                                **PRAYER FOR RELIEF**

24         WHEREFORE, the SEC respectfully requests that the Court:

25                                          **I.**

26         Issue findings of fact and conclusions of law that the defendants committed the

27  alleged violations.

28                                          28

## II.

Issue orders, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently enjoining defendants Blockvest and Ringgold and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e].

## III.

Issue orders, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently enjoining defendant Ringgold and his agents, servants, employees, attorneys, and those persons in active concert or participation with him, who receive actual notice of this Order, by personal service or otherwise, and each of them, from directly or indirectly participating in the offer or sale of any securities, including but not limited to any digital securities, and from making any misrepresentations or omissions about SEC or other regulatory approval in connection with the offer or sale of any securities, including but not limited to any digital securities.

## IV.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of defendants Blockvest and Ringgold, requiring accountings from each of the defendants, prohibiting each of the defendants from destroying documents, and granting expedited discovery.

## V.

Order defendants Blockvest and Ringgold to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

29

## VI.

Order defendants Blockvest and Ringgold to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  October 2, 2018

Respectfully submitted,

*/s/ Amy Jane Longo*

Amy J. Longo
David S. Brown
Brent W. Wilner
Attorneys for Plaintiff
Securities and Exchange Commission

30