**CORRIGAN & MORRIS LLP**
Brian T. Corrigan (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris (Cal Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendants*
BLOCKVEST, LLC, and REGINALD
BUDDY RINGGOLD, III

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    Plaintiff,<br><br>vs.<br><br>BLOCKVEST, LLC, and REGINALD BUDDY RINGGOLD, III aka RASOOL ABDUL RAHIM EL,<br><br>Defendants | Case No.: 18-CV-2287-GPC (MSB)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF DENIAL OF PRELIMINARY INJUNCTION**<br><br>**Date: February 8, 2019**<br>**Time: 1:30 p.m.**<br>**Place: Courtroom 2D**<br>**221 West Broadway**<br>**San Diego, CA 92101**<br><br>**Judge:** Hon. Gonzalo P. Curiel |

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION……………………………………………………………1

II. LEGAL ARGUMENT………………………………………………..…………2

    A. The Court Correctly Found that Plaintiff Has Not Demonstrated A Reasonable Likelihood of Future Wrongdoing – Plaintiff's Case Has Only Worsened Because No Wrongdoing Has Occurred in The Two-Months After the Preliminary Injunction Was Denied........................................................2

    B. Plaintiff Failed to Establish an Offer, Much Less A Misrepresentation or Omission "In" the "Offer"; A Requisite to A Claim Based on Section 17(a)........................................................ 4

    C. Section 17(a) Requires Actual Misrepresentations or Omission "In The Offer"; Not Pre-Offer Materials Purportedly Leading to An Offer That Was Never Made ......6

    D. Section 17(a) Requires plaintiff to Prove Scienter ..................8

III. CONCLUSION ................................................................................10

Corrigan & Morris LLP
12300 Wilshire Blvd., Suite 210
Los Angeles, California 90025

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants, Blockvest, LLC and Reginald Ringgold, oppose Plaintiff's Motion for Reconsideration of the Court's Order Denying Plaintiff's Motion for a Preliminary Injunction at Docket Entry 41 on the following grounds:

## I. INTRODUCTION

As the Court correctly noted in its Order at page 7:

> "The grant of a preliminary injunction is the exercise of a very far-reaching power never to be indulged in except in a case clearly warranting it. . . . [O]n application for preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." (emphasis added) Dymo Indus., Inc. v. TapePrinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964) (citation omitted); see also Mayview Corp. v. Rodstein, 480 F.2d 714, 719 (9th Cir. 1973) (reversing grant of preliminary injunction based on existence of disputed factual issues). (emphasis added).

The Court's eighteen (18) page Order at Dkt. 41 carefully and correctly analyzed the law and evidence within the voluminous record and dutifully rejected Plaintiff's invitation to exercise its far-reaching preliminary injunctive power because Plaintiff fell short of proving its prima facie case, and even farther short of proving that it was likely that a securities law violation would be repeated.

Plaintiff proffered no evidence of any ongoing securities transactions. Plaintiff offered no evidence of any activities at all that were ongoing and needed to be stopped by a preliminary injunction. Plaintiff offered no proof of any prior regulatory action or other evidence of wrongdoing against the Defendants, outside of the alleged misconduct in this case. There remains a substantive legal and factual dispute about whether securities were ever offered or sold by the Defendants, fraudulent or otherwise, and, if so, what materials, if any, were published to prospective purchasers

of such securities in that offer. The last two months have only proven the Court to be correct in finding no likelihood of repeat wrongdoing. Plaintiff has offered no evidence of any wrongdoing during the two months after the preliminary injunction was denied. There was no need demonstrated for the issuance of a preliminary injunction to prevent the Defendants from violating the securities laws then, and there is even less justification for a preliminary injunction now.[1]

Plaintiff wrongly accuses the Court of clear errors of law. Yet, Plaintiff offers no new law and no new evidence to reconsider. Plaintiff simply re-argues the law already rejected by the court originally argued in the underlying motion, and offers no new evidence to consider. Plaintiff's only new tactic is to attempt to distract the Court with a handful of inapplicable misapplied legal sound bites from case law involving facts not at issue in the Motion for Reconsideration. In fact the cases cited fully support this Court's decision.

For the reasons set forth herein, as further detailed in the Court's Order at Dkt. 41, the Motion for Reconsideration should be rejected in its entirety.

## II. LEGAL ARGUMENT

### A. The Court Correctly Found that Plaintiff Has Not Demonstrated A Reasonable Likelihood of Future Wrongdoing – Plaintiff's Case Has Only Worsened Because No Wrongdoing Has Occurred in The Two Months After the Preliminary Injunction Was Denied

At the core of Plaintiff's argument is that the Court should issue a preliminary injunction so that Plaintiff can protect investors against future securities fraud. But, as the Court found correctly in its very detailed eighteen-page analysis, Plaintiff has not demonstrated that such future securities fraud is likely to occur whether or not the Court issues the preliminary injunction. After carefully analyzing the record, this Court correctly concluded at page sixteen of its Order (Dkt. 41) that "Plaintiff has not demonstrated a reasonable likelihood that the wrong will be repeated." Plaintiff has

---

[1] As of the date of the hearing (February 8, 2018), it will have been slightly more than four months since Plaintiff filed its complaint.

not cured its deficient demonstration of a likelihood of repeated wrongdoing in its motion for reconsideration. Indeed, it is undisputed that Plaintiff has not offered a shred of evidence that the wrong is likely to be repeated. The only evidence that has been added to the substantial evidence offered by Plaintiff and Defendants at the Preliminary Injunction hearing last November is the undisputed fact that in the two months since the Court denied the application for preliminary injunction, no wrongdoing has occurred, much less been repeated. Plaintiff has failed to show any need for the extraordinary relief they are seeking, and on that ground alone the motion must be rejected.

The Court was right. No preliminary injunction was necessary to protect investors from a repeated wrongful securities fraud, just as the Defendants demonstrated at the hearing on the Preliminary Injunction and since then by the unblemished record of their conduct after the Court's Order.

Plaintiff speculates that the Court gave undue weight to the Defendants' commitment to provide thirty days' notice to the SEC before engaging in any offer or sale of securities or prosecuting its ICO. Plaintiff's self-serving speculation about the weight given by the Court to such promise does not create an error of law. The detailed analysis in the Court's detailed eighteen (18) page decision explains every material piece of evidence on both sides relative to these issues and renders a holistic judgment as to the likelihood of repeated wrongdoings. The Court cited *SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1908) and applied the totality of circumstances reflected in the evidence. See Dkt. 41, p. 15. The Court correctly considered that while past violations "may give rise to an inference that there will be future violations", the court expressly noted that it was guided by Ninth Circuit precedents to consider the "degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." *Id*. at 655.

Dkt. 41, p. 15. Indeed, *prior* to learning of the SEC action, Defendants had engaged a chief compliance officer to clean up prior mistakes in the work-in-progress webpage. Ringgold Decl. ¶ 8, Exhibit 4; Ct. Dkt 32. Giving appropriate weight to such factors, including Defendants' lawful conduct after learning of this Action and, appropriately the sincerity of his assurances against future violations, the Court correctly found that Plaintiff had not proven a likelihood of repeated violations. Indeed, two months later, with no injunction in place, the Defendants have not repeated any wrongdoing, further supporting the wisdom of the Court's decision. Plaintiff has proffered no new evidence nor shown a clear error of law that an injunction is necessary.

Because a likelihood that wrongdoing would be repeated is a required element of a preliminary injunction determination, the motion for reconsideration must be denied because the Plaintiff has utterly failed to prove such likelihood. Just as the original Order denied Plaintiff's overzealous and unsupported demand for a preliminary injunction against Defendants, the Court should also deny the Motion for Reconsideration.

### B. Plaintiff Failed to Establish an Offer, Much Less A Misrepresentation or Omission "In" the "Offer"; A Requisite to A Claim Based on Section 17(a)

If the Court reaches the merits of Plaintiff's Section 17(a) claim based solely on Plaintiff's pre-litigation statements, which it need not do, the Court should quickly dismiss Plaintiff's inaccurate accusation that the Court made a clear error of law. Plaintiff wrongly contends that the Court considered the subjective beliefs of some individual investors, instead of the objective nature of the investment being offered to the public, in deciding to deny the preliminary injunction. The Court, of course, did not give undue weight to the subjective beliefs of some individual investors, as Plaintiff accuses. Instead, the Court correctly articulated and followed the applicable statutes and legal precedents. The Court specifically cited *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and analyzed the factors for determining whether the BLV token

is a security. Dkt. 41, p. 9-12. Included in the Court's detailed analysis is the Court's citation of Ninth Circuit precedent in *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009), which states that "while the subjective intent of the purchasers may have some bearing on the issue of whether they entered into investment contracts, <u>we must focus our inquiry on what the purchasers were offered or promised</u>." Emphasis added. Dkt. 41, p. 11. Here, the Court had access to the Rosegold members' declarations, and testers' declarations. Reginald Ringgold Declaration ("Ringgold Dec.") ¶¶ 16-23 Exhibits 6, 8; Ct. Dkt. 32.

The Court expressly recognized that "[t]he focus on this 'investment of money' prong is 'what the purchasers were offered or promised.'" *Id.* citing *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) and *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352-53 (1943). The Court got it right. It properly focused its analysis on what was offered or promised, if anything.

The problem Plaintiff had was not that the Court misapplied its focus, as argued. The problem was that in focusing on the correct issue, determining "what exactly [the defendant] offered" [Dkt. 41, p. 12, citing *Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989)], "Plaintiff has not demonstrated that the BLV tokens purchased by the 32 test investors were 'securities' as defined under the securities laws." Order at Dkt. 41, p. 14. Footnote omitted. Similarly, with respect to the 17 investors in Rosegold, after extensive analysis over the nexus between the investments and the purported offer materials, the Court correctly concluded that there were disputed factual and legal issues and that, for purposes of the preliminary injunction motion, "Plaintiff has not demonstrated that 'securities' were sold" to them. Dkt. 41, pp. 12-15.

There is no reason for reconsidering the Court's order in this regard and no clear error of law upon which to grant such motion.

### C. Section 17(a) Requires Actual Misrepresentations or Omission "In The Offer"; Not Pre-Offer Materials Purportedly Leading to An Offer That Was Never Made

In deciding to bring its motion for reconsideration exclusively on Section 17(a), Plaintiff narrows significantly the scope of the Court's consideration.

Section 17(a) of the Securities Act of 1933 shares the same basic structure of Rule 10b-5 and Section 10(b) of the 1934 Securities Exchange Act. However, Section 17(a) differs in several important respects. It is more generous to the SEC, in that some of the claims under Section 17(a) can be brought based on mere negligence, while Section 10(b) requires scienter – intentional fraud. See, for example, Section17(a)(2) and 17(a)(3); and Section 10(b). At the same time, Section 17(a) is less generous to the SEC in other respects. For example, while Section 10(b) claims can arise out of any material statements or omissions made <u>in connection with</u> the purchase or sale of securities, Section 17(a) claims are limited to misstatements or omissions made "<u>in the offer</u> and sale of any securities." Emphasis added. The broad "directly or indirectly" language in Section 5 of the 1933 Exchange Act, which is even broader than "in connection with" language of Section 10 of the 1934 Exchange Act, is not found in Section 17(a). For Plaintiff to prove misrepresentations "in the offer," it first must establish that there was an offer at all. Plaintiff cannot and has not met its burden of proof that Defendants made an offer.

What does "in the offer" in Section17(a) of the 1933 Securities Act mean? The word "offer" is defined by the federal securities laws at Section2(a) of the Securities Act of 1933. Section 2(a) states that an offer includes an "offer to sell," "offer for sale," and "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77b(3). Unfortunately, while the definition includes an expansive list of what kinds of offers are included, it provides no guidance as to what the terms "offer" means within the definition.

Absent a statutory definition to the contrary; the Court must apply its plain meaning. *King v. Burwell* 135 S. Ct. 2480 (2015) ("If the statutory language is plain,

we must enforce it according to its terms"). It is axiomatic that an "offer" is the manifestation of an intent to be bound by its terms. "[T]he seller has manifested an intent to be bound by the highest bid submitted, his request for bids is an offer." *Carver v. Teitsworth* (1991) 1 Cal.App.4th 845, 851. Here, there was no "offer" because there was never a manifestation of intent to be bound-no request for bids was made. Because there was no "offer," there could be no misrepresentation "in the offer," a statutory prerequisite for the Section 17(a) claim upon which the Motion for Reconsideration is based.

The closest fact to an offer referenced in Plaintiff's Motion is an inoperative "Buy Now" button. But, the very fact that the Buy Now button did not operate negates the manifestation of intent to be bound. Ringgold Decl. ¶¶ 22-30, Exhibits 8 and 9; Ct. Dkt. 32. If an individual were to press the button, he or she would quickly learn that there was no manifestation of an intent to be bound, because the button intentionally did not lead them to a means for acceptance. See Reginald Ringgold Declaration ("Ringgold Decl.") ¶30.

Plaintiff recognized the deficiency in its position, and therefore invites the Court to expand the scope of Section17(a) beyond its statutory limits "in the offer." Plaintiff urges the Court to be misguided by inapposite legal sound bites and distorts the meaning of the cases cited. Not one of the Plaintiff's cases discussed the expansive analysis pertaining to documents devoid of a manifestation of intent to be bound, as we have in this case. Indeed, all of them involved an actual sale of a security or solicitation for bids and a definite, clear manifestation to induce a purchase transaction. The fact that Defendant's website had 98,000 visitors and none of them purchased a single security objectively demonstrates that the website did not offer the sale of a single security. Ringgold Decl. ¶31-32 and Exhibit 5; Ct Dk. 32. Plaintiff's cited cases were decided under schemes where there was a manifestation of an intent to dispose of a security, or solicit an offer, and frequently involve privity of contract issues and found that privity is not necessary. Many of the cases rely on other statutes,

where offering materials need only be published "in connection with the purchase or sale of any security" (Section 10(b) of 1934 Securities Exchange Act), or "directly or indirectly… to effect any transaction in a security" (Section 5, 1934 Securities Exchange Act). Indeed, *Chris-Craft* involved an interpretation of SEC Rule 135 and Section5 securities registration issues, none of which provide guidance on the Section17(a) issues here. Rule 135 is expressly limited in that rule to Section5 of the Securities Act. The Court should not be distracted by such inapposite statutes or misapplied legal sound bites of out of context case law. In *United States v. Naftalin*, 441 U.S.768, 770 (1970), the court specifically dealt with the "sale" not an "offer" of securities to five brokers. The manifestation of intent was not an issue. After the district court found the defendant guilty of fraud in the sale of securities under Section 17(a)(1), the Court of Appeals for the Eighth Circuit vacated the judgment on grounds the brokers were not investors. *Id.* at 771. The Court of Appeals opined that Section 17(a)(1) was designed to protect investors from fraudulent practices and that some impact on *investors* must be demonstrated. *Id.* The Supreme Court later reversed and clarified that the statutory language did not require that the victim of the fraud be an "*investor*" but only that the fraud occur "in" an *actual offer* or *sale* of a security. *Id.* at 772. Thus, liability under Section 17(a)(1) was properly made for the defendant's actual manifestation of intent to sell securities to certain brokers, even though the broker was not an "investor." The Court was merely clarifying the phrase "upon the purchaser," found only in subsection (3) of 17(a) of the Securities Act of 1933 (15 USCS 77q(a)) cannot be read into all three subsections of 17. The other cases have to do with privity of contract but do not deal with a situation where no manifestation of intent to be bound exists. the

### D. Section 17(a) Requires plaintiff to Prove Scienter

Finally, Section 17(a)(1) requires admissible evidence of scienter, which the Supreme Court has defined to be "a mental state embracing intent to deceive, manipulate, or defraud." See *Aaron v. SEC*, 446 U.S. 680, 686 & n.5, 695-97 (1980);

see also *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). Here, Defendants' good faith is demonstrated by the fact that after the Court denied the Plaintiff's unwarranted preliminary injunction, the Defendants have complied with all laws and commitments to the Court. And prior to Plaintiff's filing this action, Defendants had already commenced remedial activity, including the engagement of a chief compliance officer who was making corrections to the Defendant's web site **before** Defendants had any knowledge of Plaintiff's interest in the matter, and **without** having manifested an intent to sell securities to the public. Ringgold Decl. ¶¶ 69-71. 8 and Exhibits 4 and 13; Ct Dk. 32. At Exhibit 13 to the Ringgold Declaration is an excerpt of correspondence documenting that corrective action was already underway. Id. It was reasonable for Mr. Ringgold, who had no securities experience, to rely in good faith on the highly trained individual to perform diligence on all the materials created by him and others. Defendants misunderstood the securities laws, but in good faith believed they were registering with two separate government regulators and one quasi-government self-regulator and made some mistakes, but none were deliberate errors. Ringgold Decl. ¶¶1-3 and Exhibits 1-3; Ct Dk. 32. When the NFA contacted Defendants, they immediately responded by paying $3,000, submission of fingerprints, and registering for an exam. Ringgold Decl. ¶ 10. Accordingly, Defendants conduct is parsecs away from an intent to deceive.

      The Plaintiff has not proffered evidence to prove Defendants violated Sections 17(a)(2) or 17(a)(3), which would reduce Plaintiff's scienter burden to an extreme departure from ordinary care. However, under Section 17(a)(3) the Plaintiff must show a course of business which operates as a fraud or deceit "upon the purchaser." The Plaintiff has not and cannot point to a defrauded "purchaser." See Ringgold Decl. ¶28 and Exhibit 8; Ct Dk. 32. This is because there were no purchasers. *Id*. Similarly, Section 17(a)(2) requires the Plaintiff to show the Defendant received value for the sale of the security. Here, neither Blockvest nor Ringgold received value for the sale of a security. Ringgold Dec. ¶ 28 and Exhibit 8. Ringgold put in more money than he

took out and the BLV testers have attested under penalty of perjury they agreed with Defendants they would receive their test cryptocurrency back, less transaction fee paid to an unrelated third party. Accordingly, Defendants did not receive value. Ringgold Decl. ¶ 11, and Exhibit 8.

## III. CONCLUSION

Plaintiff failed in its previous attempt for a Preliminary Injunction for good and valid reasons, as detailed in this Court's eighteen (18) page decision at Dkt. 41. This Motion should be denied because the Court correctly stated the law in its decision, and the Court's factual analysis was sound. The only new undisputed evidence before the Court is the absence of any wrongdoing by the Defendants in the two months after the Court denied the preliminary injunction, fortifying the Court's decision that Plaintiff failed to demonstrate a likelihood that any wrongdoing would be repeated. Plaintiff has utterly failed to demonstrate any manifest injustice or clear error. *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 2003); FED. R. CIV. P. 59(e). The Plaintiff's Motion for Reconsideration should be denied in its entirety.

Dated: January 11, 2019　　　　　　　　　　**CORRIGAN & MORRIS LLP**

　　　　　　　　　　　　　　　　　　　　　　*/s/ Stanley C. Morris*
　　　　　　　　　　　　　　　　　　　　　　Corrigan & Morris LLP
　　　　　　　　　　　　　　　　　　　　　　Counsel for Blockvest, LLC, and
　　　　　　　　　　　　　　　　　　　　　　Defendants Reginald Ringgold